**STATE OF WEST VIRGINIA**

**FILED**

**October 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **S.W., S.T., and D.W-B.**

**No. 18-0396** (Mercer County 15-JA-150-MW, 151-MW, and 152-MW)

## MEMORANDUM DECISION

Petitioner Mother T.W., by counsel Michael Magann, appeals the Circuit Court of Mercer County's March 16, 2018, order terminating her parental, custodial, and guardianship rights to S.W., S.T., and D.W-B.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Paige Flanigan, filed a response on behalf of the children in support of the circuit court's order. Respondent intervenors, D.J and R.P., by counsel William O. Huffman, filed a response in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights without the imposition of a less-restrictive alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In September of 2015, the DHHR filed a petition that alleged petitioner's substance abuse impaired her parenting skills and endangered the children. Further, the DHHR alleged that petitioner used her food assistance benefits to purchase drugs and did not keep an adequate supply of food in her home. Finally, the DHHR alleged that petitioner was previously offered safety services in 2015, but denied using controlled substances and refused assistance at that time.

Petitioner stipulated to the allegations of abuse and neglect in October of 2015 and the circuit court adjudicated her as an abusing parent. Subsequently, petitioner was granted a post-

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

adjudicatory improvement period. The DHHR filed a case plan that required petitioner to participate in a long-term treatment program and maintain sobriety, participate in parenting and adult life skills classes, provide for the basic needs of the children, and provide proper discipline for the children. Thereafter, petitioner's improvement period was extended and she was later granted a post-dispositional improvement period. In May of 2017, the DHHR filed a motion to terminate petitioner's parental rights upon allegations that she did not fully comply with substance abuse treatment, continued to test positive for substances, and continued to expose the children to inappropriate people.

In December of 2017, the circuit court held a dispositional hearing to address the DHHR's motion for termination of petitioner's parental rights. A DHHR case worker testified that petitioner tested positive for marijuana in May of 2017, but began testing negative after she began mental health treatment. The case worker testified that the DHHR no longer required petitioner to drug screen. According to the worker, petitioner continued to have difficulty disciplining the children, particularly D.W-B., despite having completed the entire curriculum of parenting classes. Further, a service provider testified that D.W-B.'s behaviors were completely out of control at times, which required her to intervene to assist petitioner. In the provider's opinion, D.W-B.'s behavior continued to decline since the beginning of the case. The provider testified that petitioner would attempt to implement the skills learned in her classes, but they were ineffective in dealing with D.W-B.'s behavior. Petitioner's drug screen provider testified that her last positive drug screen was in May of 2017 and that she tested negative for controlled substances through November of 2017. A second DHHR worker testified that petitioner's visitations were suspended at the request of the children's therapist.

Finally, petitioner testified that she left her substance abuse program without completing it. According to petitioner, she only needed to complete community service to complete her program. Petitioner testified that she had not used her previous drug of choice, Dilaudid, or any other opiates since leaving the substance abuse facility. Petitioner agreed that D.W-B. did not respond to the discipline techniques that she learned during services. Further, petitioner testified that she participated in one family therapy session. On cross-examination, petitioner admitted that she agreed not to have inappropriate people around the children during a multidisciplinary treatment team meeting ("MDT"). Ultimately, the circuit court continued petitioner's improvement period for three months. In doing so, the circuit court stressed the need for petitioner to have renewed visitation and contact with the children.

The circuit court reviewed petitioner's improvement period in March of 2018.[2] The DHHR called a case worker who testified that petitioner's supervised visitations were restored and D.W-B.'s behaviors worsened. Additionally, the case worker testified that family counseling was suggested at an MDT, but petitioner did not follow through with that recommendation. The children's therapist testified that she originally recommended to suspend visits due a disclosure by both children that petitioner became angry with D.W-B. and threw him on the couch during a

_____

[2]The circuit court granted respondent intervenors' motion to intervene at the beginning of this hearing and respondent intervenors appeared in person and by counsel.

visit. Further, the therapist testified regarding a family counseling session and noted that the children were not as well behaved during that session as their regular sessions. According to the therapist, she made a recommendation for petitioner to attend every other therapy session, but that petitioner never contacted her afterward.

The children's foster parent, D.J, testified that D.W-B.'s behaviors were improving until the visitations resumed in February of 2018. D.J. further testified that D.W-B.'s behaviors improved after the renewed visitations were suspended. Additionally, D.J. testified that a weekly phone call visitation schedule was in effect and petitioner only called five times during the last three months. Finally, petitioner testified and denied that she was aggressive with D.W-B., but admitted there was a time when she threw both children on the couch in a playful manner. In response to the family therapy, petitioner testified that she was not informed by the therapist when to return for counseling. Petitioner also admitted that she did not call her children as scheduled and admitted to missing visits with S.W. Ultimately, the circuit court found that it was in the children's best interests to terminate petitioner's parental, custodial, and guardianship rights. Accordingly, the circuit court terminated her parental, custodial, and guardianship rights in its March 16, 2018, order. Petitioner now appeals that order.[3]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights rather than imposing a less-restrictive dispositional alternative. Petitioner asserts termination of her parental rights was unnecessary to achieve permanency for S.W. because she was placed in

---

[3]S.W.'s father's parental rights remain intact after he successfully completed an improvement period. S.W.'s permanency plan is continuation in her father's custody. S.T. and D.W-B.'s father voluntarily relinquished his parental rights. According to the parties, the permanency plan for S.T. and D.W-B. is adoption by the respondent intervenor foster parents.

her father's custody. Further, petitioner argues that the circuit court erred in terminating her rights to S.T. and D.W-B. because the DHHR offered no evidence to show a clear link between the children's negative behaviors and their contact with petitioner. Petitioner asserts the circuit court should have afforded her more time to determine the nature of those behaviors through family therapy. We disagree.

West Virginia Code § 49-4-604(b)(6) provides that the circuit court may terminate parental rights when "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and when termination is necessary for the welfare of the child. Further, West Virginia Code § 49-4-604(c)(3) provides that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected when the parent has not "responded to or followed through with a reasonable family case plan or other rehabilitative efforts."

The circuit court correctly terminated petitioner's parental rights because there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected. Although petitioner demonstrated improvement in regard to her substance abuse, she could not demonstrate her ability to properly parent the children. Petitioner's inability to correctly discipline D.W-B. is uncontroverted. The record is clear that D.W-B.'s behaviors overwhelmed petitioner and required intervention from her service providers while she exercised visitation. D.W-B.'s behaviors were reported as aggressive and violent. These behaviors are a safety concern for the child and his siblings. Although petitioner argues that she substantially complied with services, we have previously held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014). It's clear that petitioner's February of 2018 visitations negatively affected D.W-B. and led to a suspension from school due to violent behaviors. The circuit court could not find that it would be in D.W-B.'s best interest to continue in petitioner's care undisciplined and aggressive. Petitioner was given ample time to improve and learn a discipline method that would provide a safe home for all the children, but simply could not rise to that standard. Moreover, petitioner was not entitled to more time to pursue improvement through family therapy due to her refusal to comply with this service during the underlying proceedings.

Additionally, petitioner's argument regarding S.W.'s placement is not persuasive. We have previously held that West Virginia Code § 49-4-604 "permits the termination of one parent's parental rights while leaving the rights of the nonabusing parent completely intact, if the circumstances so warrant." *In re Emily*, 208 W.Va. 325, 344, 540 S.E.2d 542, 561 (2000). Further, "simply because one parent has been found to be a fit and proper caretaker for [the] child does not automatically entitle the child's other parent to retain his/her parental rights if his/her conduct has endangered the child and such conditions of abuse and/or neglect are not expected to improve." *Id*. Again, despite ample time to improve, petitioner could not provide a suitable home environment for her children. Petitioner completed the parenting curriculum and still could not remedy unsafe conditions for her children. As such, her argument is unpersuasive.

4

Finally, we have previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). Petitioner did not respond to the family case plan as evidenced by her lengthy improvement periods and her continued inability to provide a safe home for her children. Therefore, there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected. Accordingly, we find no error in the circuit court's order terminating petitioner's parental, custodial, and guardianship rights rather than imposing a less-restrictive dispositional alternative.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 16, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  October 12, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating.